Yes, your honor, may it please the court, my name is Chad Wright and I'm from Helena, Montana. Stones throw from Last Chance Gulch. And I represent Shawn Jackson on appeal. What we're doing here when we get past the stigma of child pornography is looking at knowing conduct and what kind of computer evidence is reliable to be admissible at trial. Mr. Wright, it seems to me that under Kuczynski, the government didn't prove its case about the cash. However, isn't there really overwhelming evidence involved in this case? I mean, the government focused on videos. It didn't focus on that particular element. There was all kinds of evidence that was brought in. There's a whole flood of evidence to which you don't object. Why isn't this harmless there? Let's just say for a moment that there was the court erred in the issue of the cash. Why isn't there just overwhelming evidence in this case? Well, I think there's a lot of factors here. I don't think we can discount the impact of the images that came in. Because there was a substantial number that were shown to the jury. And this court has always recognized that in sexual type cases, when you show these images, they automatically carry that prejudice. The images were very small. They were thumbprint images as opposed to the videos which were shown on the screen and which were downloaded at least three times by the defendant. Well, they were small. Yeah, I think that's correct, Your Honor. But they were available to the jury in a packet that they could review at any time. So I think you have to assume that images of those qualities have a prejudicial impact. So I think that's the first assumption. And then you get to the harmless error issue, though, don't you? Yeah, and then you get to the other evidence. And I think the videos, even though there was not the dispute, and that's not something we're challenging on here, but there were evidentiary problems with the videos, right? Because the government's expert initially said, well, the one video that you're talking about, Judge Smith, was transferred and viewed multiple times. The government's expert initially said that that was transferred to a CD. And then just before trial or at trial he said, well, I made a mistake because the CD player on that computer is not operational. Are you challenging that on appeal? I'm not challenging that, Your Honor. But you're asking me to look at a harmless error. Yeah. And what you're saying is we assume that that evidence came in without any problems, right? Without the video evidence. And I'm saying, well, there could have been problems with it. I guess what I'm struggling with on this, Mr. Wright, is that, as I understand it, you did not challenge the video issue at all. So for purposes of our review, the video came in properly. The evidence was presented to the jury. Then you have the issue of the cash. The cash evidence came in. And let's assume, for purposes of our discussion, that the government didn't properly indicate there was enough evidence of control or dominion over that and, therefore, that should not have been admitted. But at the end of the day, you've got this whole big category of the video, which was overwhelmingly the subject of the trial, overwhelmingly the subject of the whole getting caboodled in this thing. And I'm asking you, if that is a correct presentation of the record, why don't you lose on the basis of harmless error in connection with the cash? And I guess I'm not making it clear. What I'm saying is that it's not just a given because the video. I think why it was such an important part of the government's case is because at least, you know, the video was contested whether or not Mr. Jackson was the one that reviewed the video or Mr. Jackson was the one to downvote. You're not appealing that. No, I'm not appealing that, but you're saying that I have to accept that as evidence of overwhelming guilt and that whatever arguments or this other evidence that shouldn't have been let in has no impact on that overwhelming guilt. What I'm saying is that that evidence was let in in trial, but it wasn't uncontested at trial. And so if you went back to a new trial, certainly that evidence would come in again, but you wouldn't have the impact of the images and the other materials from cash and unallocated space to confirm that evidence. We're saying if that's removed from the equation, maybe that evidence of the video is not so important to prove guilt. But you have 13 videos, one video viewed three times, and you have one count. Why doesn't 13 videos satisfy one count all by itself? Well, that's what I'm saying. We're not challenging that you can't be convicted on that evidence, but certainly... Why are you appealing? Well, because there were problems with that evidence, though, that they would like to present to the jury without the impact of the unallocated files and without the impact of the cash files. Were those problems presented to the jury? Absolutely. The expert admitted that he made a mistake in the video. He said that video had been transferred to a CD, but the CD player didn't even work on that. And you argued that. Right. He argued that to the jury. The jury didn't accept it. They didn't accept it, and what we're saying is because the impact of the 350 unallocated images and the impact of the 101 images played into their analysis when they were looking at the mistakes on that expert testimony. Yeah. That's the heart of your appeal. That's the heart of the appeal, is that we have to say that the conduct and whether there was no inconduct here is affected by everything that's presented at the trial. And certainly I disagree respectfully that the showing of the images from the cash and unallocated files didn't factor into the jury's decision. The standard that we are dealing with here, Mr. Wright, is it not, is that if the jury had any reasonable basis for reaching the conclusion that it did, you're stuck, aren't you? Well, I don't think we're. Only one count. And as Judge Bea mentioned, you've got 13 videos. One video played repeatedly. That was the gravamen of the whole thing. If there's enough evidence that was there that the jury could have reasonably found against your client on the one count, how can it be anything other than harmless error on this one point that you pick up on? And, again, I guess I'm repeating myself when I say because I think the jury used this other image to factor in that. But you're flying in the face of the standard there that we have to judge on. We're not in a position to go in and parse the minds of the jurors. We have to simply find whether there was sufficient evidence. But the standard is, did they contribute to the verdict? And when you're talking about harmless error, did the evidence that shouldn't have been allowed in in any way contribute to the verdict? And that's what the government has to overcome, that harmless error standard. And I don't think you can't say that those images didn't help contribute to the verdict. It was that they paraded those images to the point where the jury, the government, told the judge, this jury is angriest and furious, not about the videos, right? The jury is angry and furious about looking through the images that we've just showed them. And so how can that not be a contribution to the verdict? If the government itself is telling the judge, we've got to stop. Why did these were so small? I don't think that was what came out of the record. If you had one video and 101 stills and 356 stills, which was what it was, that might be a different case. But you had 13 videos and one video seen three times. That shows pretty good control over the videos. But it doesn't show that Mr. Jackson controlled them, right? Because we never found the thumb drive that the expert said that that video was transferred from. So it could have been a thumb drive from somebody else. Well, there was sufficient evidence for the jury to believe that Jackson saw them, and that is an issue that you're not appealing. That's correct, Your Honor. But I'm saying what contributed to it, and that's the harmless error standard that I understand, is that the government has to prove that in some way the evidence that shouldn't have been admitted didn't contribute to the verdict. And that's what I'm saying is these images did contribute to the verdict. We have your argument well in hand. Thank you, Your Honor. May it please the Court and counsel. My name is Marcia Hurd, and I'm an AUSA from the District of Montana. I am in the Billings Office, and I tried this case below and wrote the brief on appeal. I think that the Court has squarely hit the nail on the head here, which is there was an overwhelming amount of evidence that Mr. Jackson intended to receive and possess child pornography. He subscribed to a total of seven exclusively child pornography websites that he paid $79.95 a pop for. In a period of less than four months, he viewed and downloaded images from those websites. He used child pornography search terms such as preteen nudes to find those pictures. He saved a child pornography movie to a thumb drive and watched it three different times. And some of the saved child pornography images were found in a folder labeled Sean's Folder. Mr. Jackson's first name is Sean. He also belonged to another child pornography website, and the evidence showed that he visited that child pornography website 66 different times over a period of three months, and some images were found from that website. Ms. Hurd, does the government concede that as to the images that were in the cache, that the government showed evidence that he sought out child pornography, but it did not present evidence that he exercised control or dominion over the images in the cache? And I can't concede that, and here's why, Your Honor. I think if you go back to the two cases that this Court has decided on this issue, Rahm and Kuczynski, Rahm squarely talks about dominion and control, dominion and control, and that was your case, Judge Bailiff. The Kuczynski case was actually my case. And in many ways, the argument in the Kuczynski case was very interesting because that issue was not raised on appeal. It was not raised by the defense. It was raised by the judges during the panel argument. And so then we have this opinion that kind of changes some of Rahm's language and then doesn't give us an opportunity because we've already made our record. And so when we go back on sentencing, we can't make that record again. And so there is some Rahm, we didn't decide that the evidence was sufficient to show control because he admitted that he knew how to use the cache. Correct. And that's absolutely true in Rahm. Now, interestingly enough, Sean Jackson, when he was questioned, made a comment that's very similar to that, that kind of has not been picked up on by the defense in this case. He said, the only child pornography you'll find are the ones from the websites that I went to. Well, if he thinks there's child pornography from the websites he went to on his computer, that shows some knowledge of cache files. But I think you're right, Judge Smith, that the videos were a big issue in this case and the fact that they were saved. I guess that's really what it gets down to because when you look at the Kaczynski, I mean, it's real clear at the end, whether it was in the case or not, that they went down on the fact that you could not charge this guy with anything. If he couldn't prove that he had dominion and control over those images. Correct. I mean, at least that's the way I read that case. So in this case, it seems to me that while you showed that he sought these things, that there was no evidence of exercise of dominion and control over the cache. I'm not sure that has any impact on your case, frankly, but I'm just wondering whether you agree that that is a weakness in this case. You said, the only child pornography you'll find is from the websites I went to. Yes. That you see as an admission of a party litigant or defendant that he knows that the child pornography exists in his computer because having seen it from the website, he has some notion that it is contained within his computer. Yes. It doesn't show that he knows how to access it, but he knows that it is in there. True. And that's sufficient evidence under Jackson v. Virginia for the trial jury to find the control element. Exactly. Is that true if you've got a file called Sean's file? Because he could have downloaded those images to Sean's file without downloading them or knowing that there was a cache. Well, true. And we have to kind of keep in mind the difference between cache and unallocated space files. And that was what was getting really confused in front of the jury where the issue came up and the allegations that Judge Lovell was somehow biased in this case, which we absolutely flatly contest that there was no bias here. But we have to keep in mind that a defendant's computer, when it's taken, like Mr. Jackson's computer, shows a snapshot in time and place of what the past history was. And so the problem with the Kuczynski case that doesn't reconcile with ROM is that when you subscribe to a child pornography website and you pay your money and you go there and use your password, you are knowingly receiving child pornography because that's what you paid your money for. And so at that time, you knowingly receive child pornography. It doesn't matter that it is stored in cache files or that you may not know how to reaccess them because you've paid your $79.95. You can go back any time you want. Either under receive or possess. Receive. That's the difference there. And that's the part that Kuczynski did not make clear with all respect to that panel, is they talked about, well, he couldn't access them so he didn't know he possessed them. Ah, but he did receive them and knowingly received them the same way Kuczynski's he did here because they were both people who paid money to subscribe to specific websites. You're saying that the Kuczynski case was wrongly decided. I'm saying that Kuczynski. By Kuczynski and Fernandez. I think Kuczynski. The Liberty District does. Well, I don't think that it was wrongfully decided. I think it didn't go far enough in analyzing the difference between receipt and possession because at that point we didn't have the Davenport case, which was also mine, to differentiate between the double jeopardy issue of receipt and possession. But I'm squarely focusing on receipt here. When you pay your money and you subscribe to the website and you go and look at images, you're receiving child pornography knowingly. You say it doesn't really matter if it's in unallocated space or in a cache. And it doesn't even matter whether it came from those websites. You're saying, hey, whatever's on your computer, friend, if you subscribe to these services, you're stuck with everything that's on the computer. If we can prove you knowingly received it and it was you. If it was your fingers at the keyboard. Let's just argue into it. Let's assume for a moment that there was a website and there were 50 images that you could get. You pay your money. The 50 images come down. He puts it in Sean's file. That's all he knows about. Well, let's say that there were in the cache 500 images from some other source and the government simply had no evidence from that source. But you could clearly trace the 50 images from the website to Sean's file. Would your argument still hold up about the cache then? Well, I think it depends on the term knowingly. Once you go to a website, let's say I want to buy a kayak. And I go to the Eddie Bauer catalog. And I want to look just at kayaks. I'm not interested in clothes, tents, canoes. So I click on the kayak link. And what's downloaded to my cache are just the kayak pictures, okay? Not everything else. And so there's kind of a mistaken idea that cache just gets the entire Eddie Bauer catalog and so you can't be responsible for that. It's not accurate. That's not how cache files work in a computer. And so I would be responsible for the kayak pictures that I looked at knowingly received. But all of them don't come down at the same time, do they? A page at a time, they do. And when you click on the next page link, then the next page comes down. And I appreciate that. I guess what I'm struggling with here is in my example of the 50 photos, let's say that was on day one. But on day two or three or four or five, somehow other images come to his computer that don't come from this site that you're talking about. Okay. So that the government could not prove, if it had to do it this way, that the 50 images came down to his file because you can see them there. Sure. But let's say there are 500 images on the cache and the government has no evidence as to their source. Are you saying that because the defendant subscribes to a website that sells these kinds of pictures and he bought the 50 here, that even though those went to Sean's file, that he is likewise charged with dominion and control over and knowledge of what's in the cache file and in the unallocated space? Not necessarily. You can't say- That's against Paczynski. Right. You can't say absolutely. You can't say absolutely. I would need some proof like we had in this case of search terms, preteen nudes. What are you looking for? And you also look- Videos. Right. And you also look at, okay, does he have 40,000 images of adult pornography and three child pornography images in cache? That's not a person who's looking for child pornography or knowingly receives it. That's a person who's looking for adult pornography. And so you have to look at those numbers as well as where they're located, where they've been saved, where they've been looked at. And that's where I think Paczynski didn't go far enough to make that differentiation between receipt and possession, first of all, and then the different locations. And so I think that the harmless error issue is what's smacking Mr. Jackson squarely in the face here. We're not talking one movie and one time subscription. We're talking seven subscriptions. And there was only one count, right? There was only one count. We charged one count of receipt, one count of possession, was found guilty of both, and we dismissed pursuant to Davenport on the possession count. Does the Court wish me to address any of the issues about the allegations about Judge Lovell's conduct in the case? No. Okay. Well, if there are no further questions, then I'll sit down. Thank you. Thank you. I would just take opposition to what the government is saying about the knowing conduct here, and that just by mere subscription to a website that has child pornography, that that equals knowing conduct. And this court came out just last month with United States v. Olander that defined a receipt as the idea to collect, and they cite Black's Law Dictionary for that, that you have to have evidence that you want to collect to exercise dominion and control. But, counsel, with respect, aren't you misstating what the court said there? I mean, the reality is that if you're taking her example of the site, if you pay your money and you download my hypothetical 50 images, you've received them. Whether you immediately transfer them on to somebody else or have no interest in collecting them at all, you maybe have a friend who doesn't want to subscribe to the site, he's embarrassed, but you told him that you're going to get them for him. You've still received them, have you not? Well, I don't think that's as clear cut as the government, in all due respect, Your Honor, is saying. How could it be other than just common sense? I mean, it comes down, it goes to your computer, it's there, you received it. But if you look at U.S. v. Gord, which is cited in the brief, they give the example of somebody who subscribed to, this court gives the example of somebody who subscribed to a site and then got cold feet afterwards, right? And so the idea... But there was no evidence there that it actually arrived in his computer. Here, it's very clear that things did arrive, right? Well, it's not clear that the images from those paid sites arrived on this computer. There was no direct track from those paid sites that they stayed on the computer. And so, other than the Riola site that we talked about before that was reviewed 66 times, but that's on the computer when those were reviewed 66 times, that's on the computer that wasn't even in the house, according to the evidence presented at trial when they were reviewed the 66 times. And so, that's why things... It's easy in these cases just to say, there's images, that's it, we're done here. But the knowledge aspect, and I think that's where Olander is important, is that this court is continually refining that knowledge is much more difficult than just having the images on the computer. There's got to be the ability to access, to convert, and that's in the statute, right? You've got to be able to convert these images and exercise dominion and control, not just have them there on your computer. I have a practical question. How does defense counsel, or for that matter the government, review the evidence in this case without themselves violating the statute? Well, Ms. Hurd can explain this probably much better than I can, but under the Adam Walsh Act, there's provisions set up about how the government releases this information to defense counsel, and it's usually done in a secure government facility with the forensic examiners from the government nearby. So, it's not received? So, it's not received, and it's on property either done by a defense expert. My experience is that the defense expert brings it in, and that property is on there, and then that defense expert wipes the hard drive clean before they leave the facility. That's my understanding of the figure. All right. New world. Thank you. Okay, thank you. The matter stands submitted, and the court will adjourn until 9 a.m. tomorrow morning. All rise.
judges: Pregerson, Bea, Smith M.